**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

DANIELLE C.,

                Plaintiff,

   v.                                         3:20-CV-1134
                                              (DJS)

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security,*[1]

                Defendant.
_____

**APPEARANCES:**                                  **OF COUNSEL:**

LACHMAN & GORTON                     PETER A. GORTON, ESQ.
Attorney for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.        LUIS PERE, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, MA 02203

**DANIEL J. STEWART
United States Magistrate Judge**

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted as Defendant here pursuant to FED. R. CIV. P. 25(d). The Clerk is directed to modify the docket accordingly.

**MEMORANDUM-DECISION AND ORDER[2]**

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of supplemental security benefits. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 12 & 15. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion is granted. The Commissioner's decision is affirmed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1984. Dkt. No. 11, Admin. Tr. ("Tr."), p. 155. Plaintiff reported that she left school before finishing ninth grade, however, she received her GED in 2015. Tr. at p. 32. She has no past relevant work experience. Tr. at p. 21. Plaintiff alleges disability due to bipolar, ADHD, PTSD, borderline personality disorder, anxiety, and depression. Tr. at p. 177.

### B. Procedural History

Plaintiff applied for disability benefits on March 27, 2018. Tr. at pp. 155-164. She alleged a disability onset date of February 6, 2018. Tr. at p. 156. Plaintiff's

---

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 6 & General Order 18.

application was initially denied on May 15, 2018, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 66, 76. Plaintiff appeared at a hearing before ALJ John P. Ramos on October 3, 2019, during which Plaintiff and a vocational expert testified. Tr. at pp. 27-51. On October 29, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 13-22. On November 15, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 7-9.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 27, 2018, the application date. Tr. at p. 15. Second, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, anxiety disorder, and attention deficit hyperactive disorder. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 16-17. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> the [Plaintiff] retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain

3

> attention/concentration for simple tasks; and regularly attend to a routine and maintain a schedule. The [Plaintiff] can relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks, i.e. she can ask for help when needed; accept instructions or criticism from supervisors, and handle conflicts with others; state her own point of view; initiate or sustain a conversation; and understand and respond to physical, verbal, and emotional social cues associated with simple work. She should avoid work requiring more complex interaction, negotiation, or joint efforts with coworkers to achieve work goals and she can have no interaction with the public. The [Plaintiff] can handle reasonable levels of simple work-related stress in that she can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work. She should work in a position where she is not responsible for the work of or required to supervise others, and has occasional interaction with supervisors, coworkers, no interaction with the public, and little daily change in work process or routines.

Tr. at pp. 17-18.

Fifth, the ALJ found that Plaintiff did not have any past relevant work. Tr. at p. 21. Sixth, the ALJ found that Plaintiff was categorized as a "younger individual" on the date the application was filed. *Id.* Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at pp. 21-22.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

> gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff presents four claims of error for the Court's review. Dkt. No. 12, Pl.'s Mem. of Law at pp. 8-25. Plaintiff contends first that the ALJ committed error by rejecting opinion evidence related to Plaintiff's ability to meet employer demands for work pace and/or attendance, which resulted in an improperly supported RFC. Pl.'s Mem. of Law at pp. 8-18. Second, Plaintiff contends that the ALJ committed error by improperly assessing the medical opinion evidence from four doctors: Dr. Slowik, Dr. James, Dr. Salomon, and Dr. Harding. *Id.* at pp. 19-24. Third, Plaintiff claims error due to the ALJ's alleged failure to acknowledge relevant evidence. *Id.* at pp. 24-25. Finally, Plaintiff contends that the Defendant did not sustain her Step Five burden. *Id.* at p. 25. In response, Defendant asserts that the RFC determination was supported by substantial evidence, that the ALJ properly evaluated the medical opinions, that the ALJ was not

required to discuss the statement from Plaintiff's son, and finally, that the ALJ properly found that Plaintiff retained the ability to perform a significant number of jobs at Step 5.  Dkt. No. 15, Def.'s Mem. of Law at pp. 3-15.

### A. RFC Error

Plaintiff's first claim of error is based upon the allegation that the ALJ "improperly reject[ed] undisputed medical opinion that Plaintiff cannot meet employer demands for work pace and/or attendance without meeting the overwhelmingly compelling standard."  Pl.'s Mem. of Law at p. 8.  Plaintiff cites to *Riccobono v. Saul*, 796 Fed. Appx. 49, 50 (2d Cir. 2020), for the proposition that the ALJ must base his conclusion on a medical opinion or cite "overwhelmingly compelling" evidence for his failure to do so.  Pl.'s Mem. of Law at p. 9.

As an initial matter, the "overwhelmingly compelling" standard that Plaintiff refers to by citing *Riccobono v. Saul* does not apply here.  "In *Riccobono*, the Second Circuit specifically stated that the ALJ could not interpret 'raw medical data' to discount the doctors' opinions."  *Sharon R. v. Kijakazi*, 2021 WL 3884257, at *9 (N.D.N.Y. Aug. 31, 2021).  "That does not mean that an ALJ is precluded from weighing two or more medical 'opinions' and formulating an RFC which does not specifically adhere to one opinion."  *Id.*  The ALJ here weighed the opinions of Dr. Slowik, Dr. James, Dr. Salomon, and Dr. Harding to formulate Plaintiff's RFC.  Tr. at pp. 18-21.  In doing so, the ALJ discounted the extent of the limitations suggested by Drs. James and Salomon and some of the limitations stated by Dr. Slowik, based upon the medical and other

8

evidence of record, including the Plaintiff's daily activities and treatment progress notes. *See Jack B. v. Comm'r of Soc. Sec.*, 2021 WL 780303, at *5 (W.D.N.Y. Mar. 1, 2021) (distinguishing *Riccobono* and holding that the ALJ correctly weighed the medical opinions despite the fact that the ultimate RFC did not "perfectly correspond" with any of the opinions).

First, the ALJ gave weight to consultative examiner Amanda Slowik, Psy.D., finding her opinion to be generally persuasive. Tr. at p 20. Dr. Slowik opined that Plaintiff would have moderate to marked limitations in her ability to sustain an ordinary routine. Tr. at p. 293. While the ALJ found Dr. Slowik's opinion to be generally persuasive, he indicated that the overall record and Plaintiff's level of functioning supported moderate limitations rather than more restrictive limitations. Tr. at p. 20. This was further supported by the opinion of Thomas Harding, Ph.D., a state agency consultant, who opined that Plaintiff would have only moderate limitations in her ability to concentrate, persist, or maintain pace. Tr. at p. 57. In contrast, the ALJ found the opinions of treating providers Melinda James, Psy.D., and Adriane Salomon, D.O., not persuasive. Tr. at p. 20. The ALJ found that the "extremely limiting" opinions set forth by these providers were not consistent with other sources and the overall record. *Id.*

The RFC included a number of specific, non-exertional limitations derived from these medical opinions, including limitations to avoid work requiring more complex interaction, negotiation, or joint efforts with coworkers, and to avoid interaction with the public. Tr. at pp. 17-18. However, the ALJ also concluded that the Plaintiff was

9

able to maintain attention and concentration for simple tasks and regularly attend to a routine and maintain a schedule. Tr. at p. 17-18. The ALJ stated that Plaintiff has a moderate limitation in her ability to concentrate, persist, or maintain pace. Tr. at p. 17. This is consistent with the opinion of Dr. Harding that Plaintiff would have a "moderate" limitation in her ability to concentrate, persist, or maintain pace. Tr. at p. 57. This finding is also generally consistent with the range provided by Dr. Slowik, who indicated that Plaintiff would have a "moderate to marked" limitation in this category. Tr. at p. 293. As noted above, there is no requirement that the RFC "perfectly correspond" with any one medical opinion. *Jack B. v. Comm'r of Soc. Sec.*, 2021 WL 780303, at *5. "[T]he RFC is an administrative finding reserved to the Commissioner and not a medical finding." *Desirae D. v. Comm'r of Soc. Sec.*, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021) (citing 20 C.F.R. § 416.927(d)). Where, as here, the ALJ has reached an RFC determination based on a careful review of the medical opinion evidence and on the entire record viewed as a whole, remand is not required. *Cook v. Comm'r of Soc. Sec.*, 818 Fed. Appx. 108, 110 (2d Cir. 2020); *Patrick S. v. Comm'r of Soc. Sec.*, 2021 WL 5357942, at *3 (W.D.N.Y. Nov. 17, 2021).

### B. Medical Opinion Evidence

Plaintiff's second claim of error relates to the ALJ's assessment of the medical opinion evidence of record, which Plaintiff asserts was improper. Pl.'s Mem. of Law at p. 19. Plaintiff asserts that the ALJ erred with regard to four separate medical opinions.

*1. Dr. Slowik*

First, Plaintiff asserts that the ALJ "affirmatively misstated" the opinion of consultative psychologist Dr. Slowik. However, this assertion is incorrect. Plaintiff's brief states "[t]he ALJ writes that Dr. Slowik opined that Plaintiff has '*mild to moderate* limitations in her ability to sustain concentration and her ability to interact adequately with supervisors, co-workers, and the public; sustain and ordinary routine.'" Pl.'s Mem. of Law at p. 19. While the sentence written by the ALJ may not be well-punctuated, when read fully in context, it also does not contain an inaccurate recitation of Dr. Slowik's opinion. The ALJ wrote:

> Amanda Slowik, Psy.D., performed a consultative examination of the claimant on May 5, 2018, and, in her opinion, the claimant has mild limitations in her ability to understand, remember, or apply complex directions and instructions; use reason and judgment to make work related decisions; and maintain personal hygiene and mild to moderate limitations in her ability to sustain concentration **and her ability to interact adequately with supervisors, co-workers, and the public; sustain and [sic] ordinary routine; and regulate emotions is moderately to markedly limited** (3F/4).

Tr. at p. 20 (emphasis added).

The medical source statement from Dr. Slowik reads as follows:

> The claimant's ability to understand, remember, or apply simple directions and instructions and be aware of normal hazards is not limited. The claimant's ability to understand, remember, or apply complex directions and instructions; use reason and judgment to make work related decisions; and maintain personal hygiene is mildly limited. **The claimant's ability to interact adequately with**

11

>  **supervisors, co-workers, and the public; sustain and [sic] ordinary route; and regulate emotions is moderately to markedly limited**. The claimant's ability to sustain concentration is mildly to moderately limited.

Tr. at p. 293.

A careful reading of both the ALJ's decision and the opinion provided by Dr. Slowik clearly establishes that there was no error in this respect.

     Second, Plaintiff claims that, contrary to the ALJ's decision, her treatment history and ADLs do not undermine Dr. Slowik's opinion. Pl.'s Mem. of Law at p. 20. However, the Court declines to reweigh the evidence where, as here, there is substantial evidence in the record to support the ALJ's decision. *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016). It is "within the ALJ's purview to review the opinions of record and weigh them accordingly along with Plaintiff's testimony, reports, and treatment history to determine her RFC." *Nesiba O. v. Comm'r of Soc. Sec.*, 2019 WL 464882, at *7 (N.D.N.Y. Feb. 6, 2019). "It is the province of the ALJ to resolve genuine conflicts in the record." *Clemons v. Comm'r of Soc. Sec.*, 2017 WL 766901 at *4 (N.D.N.Y. Feb. 27, 2017) (citing *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)). As a result, when the ALJ's conclusions find reasonable support in the record, courts "will defer to the ALJ's resolution" regarding the appropriate weight to be afforded to various medical opinions. *Teresa L. v. Comm'r of Soc. Sec.*, 2020 WL 6875254, at *7 (W.D.N.Y. Nov. 23, 2020).

*2. Drs. James & Salomon*

The ALJ found the opinion of treating providers Melinda James, Psy.D., and Dr. Adriane Salomon, D.O., to be "not persuasive" due to lack of consistency with other sources and with the overall record. Tr. at pp. 20-21. The ALJ noted that the limitations opined by both doctors were "extremely limiting" when compared to the limitations opined by other professionals. The opinions of treating providers, such as Dr. James and Dr. Salomon, are no longer entitled to any specific evidentiary weight. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must now evaluate the medical opinions and prior medical findings by considering a list of five factors: the supportability of the opinion, consistency with the record and other sources, the relationship that the writer of the opinion has with the claimant, the specialization of the writer, and "other factors," including the length of treatment and frequency of examinations. 20 C.F.R. § 404.1520c(c)(1-5). Of those factors, the two most important are the consistency and supportability factors, 20 C.F.R. § 416.920c(a), both of which the ALJ addressed. Tr. at pp. 20-21. "Both supportability and consistency in part require comparison of the medical opinions with other medical sources." *Mark K. v. Comm'r of Soc. Sec.*, 2021 WL 4220621, at *4 (W.D.N.Y. Sept. 16, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

The ALJ found that the extreme limitations opined by both doctors were inconsistent with Plaintiff's treatment history and with her reported activities of daily living. Tr. at pp. 20-21. More specifically, the ALJ noted that Plaintiff had never been hospitalized for psychiatric treatment, was making progress in treatment, and was

reporting some relief from symptoms provided by medication.  Tr. at pp. 19-20, 290, 328.  The ALJ also considered Plaintiff's reported activities of daily living, including her ability to cook, clean, do laundry, shop, manage money, care for her four children, including two with mental health issues, and care for her pet.  Tr. at pp. 20, 33, 37-39, 188-190, 311.  Nevertheless, Dr. James opined that Plaintiff would be off-task more than 33% of a work day, and would be absent from work three or more days per week.  Tr. at p. 386.  Dr. Salomon opined that Plaintiff would have "marked" limitations in every category available on the mental questionnaire checklist.  Tr. at pp. 388-389.  The ALJ found that both opinions lacked supportability, as they were both provided with little to no explanation for the extreme limitations they indicated.  Tr. at p. 21.

The ALJ also noted that both Drs. James and Salomon, despite being treating providers, had relatively limited treatment histories with the Plaintiff.  Tr. at p. 21.  Dr. James saw Plaintiff twice for her purposes of her evaluation, and limited the report to a time period from September 17, 2018 to September 26, 2018.  Tr. at pp. 297-305, 385-386.  The ALJ found this time limitation particularly problematic considering the record evidence that Plaintiff had made improvements in treatment closer to July 2019.  Tr. at p. 328.

Among other alleged errors, Plaintiff claims that the ALJ "failed to recognize or explain" the reference and incorporation of the "Confidential Psychological Testing Report," Pl.'s Mem. of Law at p. 21, which Plaintiff claims adds supportability to Dr. James' opinion.  However, on page 7 of the ALJ's decision, he discusses this report at

some length, noting that "[t]he results of personality testing performed were invalid due to 'an extreme tendency toward symptom exaggeration.'" Tr. at p. 19, 304.

The ALJ also found it relevant that Dr. Salomon examined the Plaintiff on only four occasions over the course of six or more months of treatment, and that the treatment notes from those encounters did not support the significant limitations set forth in her opinion. Tr. at p. 21. Dr. Salomon was Plaintiff's primary care doctor who it appears was handling her medication management until she was able to get an appointment with another, more specialized provider. Tr. at pp. 34-36. Treatment notes from Dr. Salomon show some improvement in response to medication. Tr. at p. 368 ("[Plaintiff] reports overall she is doing very well. She feels like her anxiety is in much better control.") It is the ALJ's role "to choose between properly submitted medical opinions." *Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, at *6 (N.D.N.Y. Mar. 18, 2019). When the ALJ's conclusions find reasonable support in the record, as is the case here, courts "will defer to the ALJ's resolution" regarding the appropriate weight to be afforded to various medical records. *Teresa L. v. Comm'r of Soc. Sec.*, 2020 WL 6875254, at *7 (W.D.N.Y. Nov. 23, 2020). A review of the medical records demonstrates that the ALJ's conclusions here are clearly supported by substantial evidence.

### 3. Dr. Harding

Plaintiff argues that Dr. Harding's opinion could not be given weight because he failed to comply with the Program Operations Manual System ("POMS") requirements. Pl.'s Mem. of Law at pp. 22-24. The Court finds that argument unavailing because

15

"POMS guidelines 'have no legal force, and they do not bind the Commissioner.'" *Tejada v. Apfel*, 167 F. 3d 770, 775 (2d Cir. 1999) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)); *Maite V. v. Kijakazi*, 2021 WL 6333101 at \*4 (N.D.N.Y. Dec. 2, 2021). Moreover, an ALJ may permissibly assign more weight to the opinion of a non-examining source where there is record evidence to support such a determination. *See Mia Lu M. v. Comm'r of Soc. Sec.*, 2020 WL 3869627, at \*8 (N.D.N.Y. July 9, 2020).

Here, the ALJ indicated that Dr. Harding's opinion was most consistent with the medical evidence of record. He based this determination on much of the same evidence he relied upon in discounting the opinions of Drs. James and Salomon. He noted that Plaintiff had never been hospitalized for psychiatric treatment and had made progress in treatment. Tr. at pp. 19-20. He also noted that Plaintiff reported being capable of a broad range of daily activities including cooking, cleaning, doing laundry, shopping, and caring for four children and a dog. Tr. at p. 20. Plaintiff indicated that she lived independently with three of her children and was able to manage money and drive. *Id.* The ALJ also identified that Plaintiff's mental status examinations during this time were generally benign. Tr. at p. 19. As a result, the ALJ determined that the more moderate limitations recommended by Dr. Harding were most consistent with the evidence. In so deciding, the ALJ incorporated a number of specific restrictions within the RFC to account for Plaintiff's continuing symptoms. Tr. at pp. 17-18.

Plaintiff's arguments that Dr. Harding's opinions should be rejected because he did not examine Plaintiff and lacked appropriate program knowledge have been

considered and are no basis for remand. *Kim S. v. Comm'r of Soc. Sec.*, 2018 WL 5792759, at *5 (N.D.N.Y. Nov. 5, 2018) ("an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.")

### C. Letter from Plaintiff's Son

Plaintiff's third claim of error is based upon the ALJ's alleged failure to consider a letter written by Plaintiff's minor son. Pl.'s Mem. of Law at pp. 24-25. Although SSR 85-16 requires the Commissioner to consider evidence from third parties, the ALJ is not required to give any weight to such evidence. *Frederick C. v. Comm'r of Soc. Sec.*, 2021 WL 466813, at *14 (N.D.N.Y. Feb. 9, 2021). Nor is the ALJ required to mention or discuss every single piece of evidence in the record. *Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, 2020 WL 1815754, at *5 (W.D.N.Y. Apr. 10, 2020). "Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Frederick C. v. Comm'r of Soc. Sec.*, 2021 WL 466813 at *14 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). There is no requirement that an ALJ discuss third-party testimony in his or her written decision. *Panella v. Colvin*, 2016 WL 1275644 at *5, n.2 (N.D.N.Y. Mar. 31, 2016) ("to the extent that Plaintiff argues that the ALJ erred by not discussing in his written decision the testimony of Plaintiff's family members and others concerning his physical limitations, the Court finds this argument to be without merit.")

The evidence in question here is a short statement purportedly written by Plaintiff's minor son. Tr. at p. 204. Plaintiff asserts that this statement provides support for "limitations to work pace and attendance," Pl.'s Mem. of Law at p. 25, because the statement says that "[w]hen she has bad days there is nothing anyone can do to help her." Tr. at p. 204. However, the ALJ was under no obligation to discuss this letter, *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013), nor was he required to give it any weight in his decision. *Frederick C. v. Comm'r of Soc. Sec.*, 2021 WL 466813 at *14. There is sufficient evidence of record to permit the Court to glean the ALJ's rationale for discounting this opinion. As a result, Plaintiff's claim of error on this point is unavailing.

### D. Step 5 Error

Plaintiff's last claim of error relates to the Commissioner's burden at Step 5. Plaintiff claims that the ALJ erred by using an "improper hypothetical that did not account for the full extent of Plaintiff's impairment" and that as a result, the testimony from the vocational expert "cannot constitute substantial evidence."

"A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 212 (N.D.N.Y. 2009). "If a hypothetical question does not include all of a claimant's impairments, limitations and restriction, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to

support a conclusion of no disability." *Andrea N. v. Saul*, 2020 WL 1140512 at *9 (N.D.N.Y. Mar. 9, 2020) (quoting *Pardee v. Astrue*, 631 F. Supp. 2d at 211).

The Court finds that the ALJ's finding that Plaintiff was capable of performing a significant number of jobs in the national economy is supported by substantial evidence in the record. As stated above, the ALJ properly determined Plaintiff's RFC, and substantial evidence in the record supports that finding. Because the ALJ posed a hypothetical based on that RFC, and the jobs that the vocational expert set forth all constitute work with the non-exertional limitations set forth in the RFC, the Court finds that the Step 5 determination is supported by substantial evidence.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: March 16, 2022
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge